UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Emergis Technologies, Inc.,

Plaintiff,

vs.

Otter Tail Corporation,

Defendant.          Civ. No. 06-348 (RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c), upon the Motion of the Defendant Otter Tail Corporation ("Otter Tail") for Summary Judgment.  A Hearing on the Motion was conducted on October 5, 2006, at which time, the Plaintiff Emergis Technologies, Inc., f/k/a BCE Emergis Technologies, Inc. ("Emergis"), appeared by David K. Callahan, Alison R. Aubry, and Kurt J. Niederluecke, Esqs., and Otter Tail appeared by J. Thomas Vitt, and

Bartholomew B. Torvik, Esqs.   For reasons which follow, we grant Otter Tail's Motion for Summary Judgment.

## II.   Factual and Procedural Background

Emergis contends that Otter Tail infringes its Patent,[1] which is directed towards an automated electronic invoicing and payment system for providing remote customer review of automated billing from an invoicer.  See, Complaint, at ¶14; Exh A.  The patent at issue is United States Patent No. 6,044,362 (the "'362 Patent"), which consists of six (6) independent, as well as ninety-three (93) dependent claims.  Each of the independent claims contains the following clause in the preamble: "wherein the customer payment instructions are sent from the customer **directly** to the invoicer." See, Claims 1, 36, 50, 97, 98, and 99 [emphasis added].  In addition, the body of each of the independent claims contains a limiting clause, which requires that the claimed invention "transmit[] the customer payment instructions from the customer **directly** to said invoicer."[2]  Id. [emphasis added].

---

[1]The Patent in suit was issued to inventor R. Alan Neely, but Emergis alleges that it owns the entire title, right, and interest in United States Patent No. 6,044,362 (the "'362 Patent"), by way of an assignment.  See, Complaint, at ¶9.

[2]The body of Claim 97 is somewhat different, in that it actually states that the claimed invention "provid[es] customer payment instructions from the customer in response to the request for payment instructions directly to said invoicer."  In any

Otter Tail contends that its accused system does not "directly" send payment instructions from the customer to the invoicer, and accordingly, that it does not infringe the '362 Patent, either literally, or under the Doctrine of Equivalents. Emergis argues that Otter Tail's interpretation of the term "directly" is exceedingly narrow, and that additional discovery is necessary to determine whether the accused system falls within the metes and bounds of its Patent's claims.

A.   <u>Specification and Prosecution History</u>.   On September 8, 1997, the inventor filed the patent application that eventually issued, on March 28, 2000, as the '362 Patent.   The specification, which appears in the initial patent application, is substantively the same as the specification present in the issued Patent, and provides that the following need existed in the prior art:

> Thus, there exists a need for a simple, straight forward system and method of automated electronic invoicing and payment that directly involves the invoicer and the customer while, at the same time, does not require a third party service provider and can be customized to include pre-approved payments for invoices of a certain type or under a certain dollar threshold.

<u>Col. 1</u>: 53-59.

---

event, the differences between Claim 97, and the other independent claims, are not sufficient to merit separate treatment, for these purposes, as all of the independent claims require that the customer transfer, or submit, payment instructions "**directly**" to the invoicer.

In describing the invention, the specification included the following passage:

> Although the preferred embodiment anticipates that an invoicer may choose to outsource webserver hosting or webserver and remittance processing to an outside company on behalf of the invoicer, the service to customers would be provided so that the customer would not normally be aware that the invoicer was not actually operating the product directly.

Col. 8: 30-36.

The '362 Patent's specification also provides that "[t]he customer interface receives customer billing data and request for payment instructions from the invoicer presentation electronics and provides those items to the customer," and "[t]he interface also receives customer payment instructions in response to the request for payment instructions and transmits those instructions from the customer to the invoicer." Col 5: 31-36.  In one embodiment of the invention:

> [T]he customer provides an electronic authorization 52 to the invoicer 10 permitting customer's account to be charged. This step eliminates the time and expense of preparing and mailing a paper check. Thus, invoicer 10 could be in a position to debit customer's bank account in as little as one day as opposed to the period required to receive a paper check 22.

Col. 4: 52-58.

The Patent Examiner rejected all 99 of the initial application's claims as obvious, and unpatentable, in lieu of the prior art.  See, Declaration of Bart B. Torvik ("Torvik

- 4 -

Decl."), <u>Docket No. 24</u>, Exh. 2, pp. 54 and 58. In response, the prosecuting attorney

argued as follows:

> As the Examiner will recall, the present invention is
> directed to a system for automated electronic invoicing and
> payment system for providing remote customer review of
> automated billing from an invoicer.  The system includes
> invoice presentment electronics having a control system
> and communication electronics.  The system also includes
> at least one remote authorization terminal having a
> customer interface.  The customer interface of the remote
> authorization terminal is adapted to present the billing data
> to a customer and to receive a response from the customer
> **directly** to the invoicer relating to the billing data for
> automated billing or modification of the billing data for
> modifying automated billing.
>
> *       *       *
>
> Consistent with the above interview [between the Applicant
> and the Patent Examiner], the independent Claims have
> been amended to recite that the customer directly
> communicates the invoice related matter to the invoicer.
> As discussed during the interview, unlike the prior art of
> record, the present invention eliminates the problems
> associated with using a third party service provider (see e.g.
> page 1, lines 25-37 of the Specification).

<u>Torvik Decl</u>., Exh. 2, pp. 87-89 [emphasis in original].

The Examiner Interview Summary Record notes that the Patent Examiner, and the

prosecuting attorney, agreed that "the claims have to be amended to reflect that

customer is directly communicating the invoice & related matter with the invoicer,"

before allowance.  Id. at p. 78.  After finally allowing the claims, the Patent Examiner

included a "statement of reasons for allowance," which noted as follows:

> The prior art does not teach or suggest:
>
> In regard to claims 1, 36, 50, and 97-99:
>
> > An invoicer electronically presenting to a customer for review an invoice containing billing data and request for payment instructions, the customer receiving the invoice on his computer/electronic customer interface, the customer entering (receiving in customer authorization interface) the instructions including at least the invoice number and customer's requisite/associated payment account, **and transmitting said instructions directly to the invoicer as in Figs 2. and 3A**.

Id. at p. 136 [emphasis added].

   B.   Otter Tail's System that is Accused of Infringing the '392 Patent.

Otter Tail urges that it utilizes a third-party service provider, Princeton

eCom ("Princeton"), in order to allow customers to pay their bills online, via a service

dubbed "ePay."  See, Declaration of Jennifer Roth ("Roth Dec."), Docket No. 22, at

¶¶2-3.  Otter Tail's customers have the option to enroll, by submitting their bank

account information to Princeton, and selecting either manual or automatic payments.

Id. at ¶8.

- 6 -

Every business day, Otter Tail sends Princeton an electronic file containing its customers' monthly bills. Id. at ¶10. After receipt of that file, Princeton sends an e-mail to every customer who has an outstanding bill, and invites the customer to pay the bill online. Id.

Customers who have chosen to have the bill amount automatically deducted need not take any action, as they have provided their instructions to Princeton when they enrolled in the ePay system. Id. at ¶12. The debit instruction is sent to the customer's bank, through Princeton's originating depository financial institution, which then sends a corresponding credit instruction to Otter Tail's bank. Id. The customer's payment instructions are never sent to Otter Tail. Id. at ¶13.

Customers who manually schedule payments begin the process by visiting Otter Tail's website. Id. at ¶7. After choosing to pay the bill online, the customer is directed to a log-in screen, and directed to Princeton's web server, which is located in New Jersey. Id. at ¶15. However, the customer is not aware that they have been directed to the Princeton website.

When a customer selects the "pay" function on the Princeton website, the customer sends an electronic communication to Princeton's servers in New Jersey, without any involvement from Otter Tail. Id. at ¶16-17. Once Princeton receives that

payment instruction, it processes the payment through Princeton's bank, which sends an electronic debit instruction to the customer's bank.  <u>Id.</u> at ¶12.  Princeton then sends an electronic credit instruction to Princeton's bank, in order to credit Otter Tail's bank.  <u>Id.</u>  The customer's payment instructions are never sent to Otter Tail. <u>Id.</u> at ¶13.

According to Otter Tail, "the electronic payment system used by Otter Tail does not permit, require, or involve direct communication between Otter Tail and the paying customer," and its system is the same as that depicted in Figure 1 of the '362 Patent, which describes the prior art.  <u>Id.</u> at ¶18.

In turn, Emergis contends that, "at least the ePay system used by Otter Tail to allow its customers to view and pay their bills electronically infringes the '362 Patent." <u>Emergis' Memorandum in Opposition</u>, <u>Docket No. 27</u>, at p. 3.  Emergis also argues that the appearance of the ePay website would not inform customers that Otter Tail was not actually operating the product directly, and Emergis emphasizes that the ePay website purports to be "Otter Tail Power Company's free electronic bill payment service," and that an "electronic service statement will be available one business day after Otter Tail Power Company prepares it."   <u>Printouts from ePay Service</u>, <u>Declaration of Alison Aubry</u>, <u>Docket No. 30</u>, Exh. 7, at pp. 4, 7-15.

III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.    Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 1004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761,

768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

B.   <u>Legal Analysis</u>.   Patent infringement analysis involves a two-step process.   "First, the claim must be properly construed to determine its scope and meaning," and "[s]econd, the claim as properly construed must be compared to the accused device or process." <u>Applied Medical Resources Corp. v. U.S. Surgical Corp.</u>, 448 F.3d 1324, 1332 (Fed. Cir.  2006), quoting <u>Carroll Touch, Inc. v. Electro Mech. Sys., Inc.</u>, 15 F.3d 1573, 1576 (Fed. Cir. 1993).   The first step of claim construction involves a question of law that is reserved solely to the Court.  See, <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372 (1996).  "Step two, comparison of the claim to the accused product, requires a determination that every claim limitation or its equivalent can be found in the accused product."    <u>Abbott Laboratories v. Novopharm Ltd.</u>, 323 F.3d 1324, 1329 (Fed. Cir. 2003), citing <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 29 (1997).

A determination, as to whether every element of the claim limitations is present in an accused product, is ordinarily a question of fact.  See, <u>Bai v. L & L Wings, Inc.</u>, 160 F.3d 1350, 1353 (Fed. Cir. 1998), citing <u>North Am. Vaccine, Inc. v. American Cyanamid Co.</u>, 7 F.3d 1571, 1574 (Fed. Cir. 1993).  However, "[s]ummary judgment

- 11 -

on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." <u>PC Connector Solutions LLC v. SmartDisk Corp.</u>, 406 F.3d 1359, 1364 (Fed. Cir. 2005), citing <u>Bai v. L & L Wings, Inc.,</u> supra at 1353-54.

Given these precepts, we turn to each step of the analytical process.

1.      <u>Claim Construction</u>.  The construction of patent claims is a legal determination, exclusively within the province of the Court.   See, <u>Markman v. Westview Instruments, Inc.,</u> supra at 391.  "On Summary Judgment, any factual issues underlying claim interpretation are not considered in a light most favorable to the nonmoving party, as the determination is to be made by the Court in the first instance." <u>Transclean Corp. v. Bridgewood Services, Inc.,</u> 77 F. Supp.2d 1045, 1065 (D. Minn. 1999), aff'd in relevant part, 290 F.3d 1364 (Fed. Cir. 2002), citing <u>Cybor Corp. v. FAS Techs., Inc.,</u> 138 F.3d 1448, 1456 (Fed. Cir. 1998).

a.      <u>Methodology</u>.  "When interpreting claims, we inquire into how a person of ordinary skill in the art would have understood [the] claim terms at the time of the invention." <u>Cook Biotech Inc. v. Acell, Inc.,</u> 460 F.3d 1365, 1372-73 (Fed. Cir. 2006), quoting <u>Pfizer, Inc. v. Teva Pharms. USA, Inc.</u>, 429 F.3d 1364,

1372-73 (Fed. Cir. 2005), citing, in turn, Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005), cert. denied --- U.S. ---, 126 S. Ct. 1332 (2006). "When construing claims, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC, 370 F.3d 1343, 1350 (Fed. Cir. 2004); see also, Abbott Laboratories v. Andrx Pharmaceuticals, Inc., 473 F.3d 1196, 1209 (Fed. Cir. 2007)("The court looks to sources such as the words of the claims themselves, the written description of the patent, and extrinsic evidence to ascertain the meaning of the term."), citing Phillips v. AWH Corp., supra at 1314; MBO Laboratories, Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1329 (Fed. Cir. 2007)("The most relevant source is the patent's specification, which is 'the single best guide to the meaning of a disputed term.'"), quoting Phillips v. AWH Corp., supra at 1315, quoting in turn Vitronics Corp. v. Conceptronic, Inc., supra at 1582. Accordingly, "[c]laim construction begins with the language of the claims." Housey Pharmaceuticals, Inc. v. Astrazeneca UK Ltd., 366 F.3d 1348, 1351-52 (Fed. Cir. 2004), cert. denied 543 U.S. 1096 (2005),citing Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999). In this process, the Court "indulges a 'heavy presumption' that the claim terms carry their ordinary and customary

meaning." W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC, supra at 1350, citing

Johnson Worldwide Assocs. v. Zebco Corp., supra at 989.

If the claim language is ambiguous, Courts may consider extrinsic evidence,

such as expert testimony or dictionaries, in order "to ascertain the plain and ordinary

meaning of claim terms," but "the intrinsic record is used to resolve ambiguity in

claim language or, where it is clear, trump inconsistent dictionary definitions." W.E.

Hall Co., Inc. v. Atlanta Corrugating, LLC, supra at 1350, citing Kumar v. Ovonic

Battery Co., Inc., 351 F.3d 1364, 1367-68 (Fed. Cir. 2003); see also, Housey

Pharmaceuticals, Inc. v. Astrazeneca UK Ltd., supra at 1351-52("Dictionaries and

treatises may provide insight into a term's ordinary meaning thus defined.");

Vanderlande Industries Nederland BV v. I.T.C., 366 F.3d 1311, 1318 (Fed. Cir. 2004)

("[E]xtrinsic evidence can shed useful light on the relevant art -- and thus better allow

a court to place itself in the shoes of a person of ordinary skill in the art."); Tex.

Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202-03 (Fed. Cir. 2002), cert.

denied 538 U.S. 1058 (2003); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576,

1582 (Fed. Cir. 1996).

Of course, "[i]f there is a discernable plain and ordinary meaning of the claim

language, then this meaning usually defines the scope of the claims unless the patentee

has explicitly disclaimed or clearly disavowed this meaning in the specification or prosecution history." <u>Housey Pharmaceuticals, Inc. v. Astrazeneca UK Ltd.</u>, supra at 1351-52, citing <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 358 F.3d 898, 906 (Fed. Cir. 2004)(requiring "words or expressions of manifest exclusion or restriction" to be present before broad terms in a claim will be read narrowly in light of a narrow specification); <u>Middleton, Inc. v. Minn. Mining Mfg. Co.</u>, 311 F.3d 1384, 1388 (Fed. Cir. 2002)("This court also considers the prosecution history to determine whether the applicant clearly and unambiguously disclaimed or disavowed any interpretation during prosecution in order to obtain claim allowance.").

"For example, the patentee may act as his own lexicographer and expressly define the term in the specification." <u>Id.</u>; see also, <u>Liquid Dynamics Corp. v. Vaughan Co., Inc.</u>, 355 F.3d 1361, 1367 (Fed. Cir. 2004); <u>3M Innovative Properties Co. v. Avery Dennison Corp.</u>, 350 F.3d 1365, 1370-71 (Fed. Cir. 2003). Courts can also look to the prosecution history. See, <u>Liquid Dynamics Corp. v. Vaughan Co., Inc.</u> supra at 1367. "When we use the prosecution history as source material, the prior art cited and the applicant's acquiescence with regard to that prior art indicate the scope of the claims, or in other words, what the claims do not cover." <u>Id.</u> at 1367-68.

b.    <u>Application</u>.  Both parties imbue the term "directly," as it

is used throughout the independent claims, with a different meaning.  According to

Emergis:

> "[D]irectly" means that the customer communicates
> payment instructions to the invoicer without reliance upon
> a third party acting independently from the invoicer.  The
> invention specifically contemplates that "directly" includes
> solutions in which the customer communicates payment
> instructions to an entity who is acting on behalf of the
> invoicer.

<u>Joint Claim Construction Statement</u>, <u>Docket No. 37</u>, at p. 3.[3]

On the other hand, Otter Tail contends the term "directly" should be given the

following meaning:

> The customer communicates payment instructions to the
> invoicer without reliance upon or use of a third party
> service provider.

<u>Id</u>.

---

[3]While we agree that the specification contemplates third party-solutions, as
argued by Emergis, such a recognition does not mean that the invention, as described
by the specification, was claimed by the patentee.  See, <u>Johnson & Johnston
Associates Inc. v. R.E. Service Co., Inc.</u>, 285 F.3d 1046, 1054 (Fed. Cir. 2002)
("[W]hen a patent drafter discloses but declines to claim subject matter, as in this case,
this action dedicates that unclaimed subject matter to the public.").

We find that Otter Tail's construction of the term "directly" is correct as a matter of law.[4]

The language in each of the independent claims specifies that the payment instructions are to be sent "directly" to the invoicer. The plain and ordinary meaning of "directly" is "without an intervening agency or step." See, e.g., Merriam-Webster's Collegiate Dictionary (9th Ed. 1984). Although we do not rely on the definition provided by a dictionary, which is "external evidence," we find it helpful to provide context to the plain and ordinary meaning of the term "directly." As was recognized by the Court of Appeals for the Federal Circuit, "[J]udges are free to consult dictionaries and technical treatises 'at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition

---

[4]Neither party has addressed whether the third party service provider -- in this instance, Princeton -- could be considered an "invoicer," to whom the customer's payment instructions are directly sent. Of course, such a broad interpretation would result in having the claims directly read upon the prior art, as depicted in Figure 1 of the '362 patent, which would render the patent unenforceable. However, that analysis should not apply in this instance. See, Phillips v. AWH Corp., 415 F.3d 1303, 1327 (Fed. Cir. 2005)("While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction."), citing Nazomi Communications, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1368 (Fed. Cir. 2005).

found in or ascertained by a reading of the patent documents.'" <u>Phillips v. AWH Corp.</u>, supra at 1322-23, quoting <u>Vitronics v. Conceptronic</u>, supra at 1584 n. 6; see also, <u>Free Motion Fitness, Inc. v. Cybex Intern., Inc.</u>, 423 F.3d 1343, 1348 (Fed. Cir. 2005).

Here, Emergis contends that the claim language, "wherein the customer payment instructions are sent from the customer **directly** to the invoicer," can encompass systems in which the payment instructions are sent to a third party who is "acting on behalf of the invoicer." Such a strained reading is incompatible with the ordinary and plain meaning of the term "directly," given that Emergis' construction would allow for an intervening agency or step, by way of a third party, in transmitting the instruction to the invoicer. Accordingly, we turn to the specification, and other intrinsic evidence, to determine whether the patentee otherwise clarified its meaning of the term "directly," consistent with the construction Emergis now advocates.

"The court must always read the claims in view of the full specification." See, <u>SanDisk Corp. v. Memorex Products, Inc.</u>, 415 F.3d 1278, 1285 (Fed. Cir. 2005), cert. denied, --- U.S. ---, 126 S. Ct. 829 (2005); <u>Toro Co. v. White Consol. Industries, Inc.</u>, 199 F.3d 1295, 1299 (Fed. Cir. 1999) ("However, words of ordinary usage must nonetheless be construed in the context of the patent documents."). We accept that

a patentee may act as his own lexicographer, and that a claim construction that excludes a preferred embodiment "is rarely, if ever, correct." SanDisk Corp. v. Memorex Products, Inc., supra at 1285, quoting Vitronics v. Conceptronic, supra at 1583; see also, C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 865 (Fed. Cir. 2004).

Emergis contends that Otter Tail's construction of "directly" would exclude what Emergis described as a preferred embodiment in the Patent's specification -- specifically, the anticipation that a third party may out-source webserver hosting, or remittance processing. See, Col. 8: 30-36. However, that specification pre-existed three (3) iterations of amendments, and the term "directly" was not present in the independent claims, until the Examiner required its inclusion in order to allow the Patent's issuance. Since the inclusion of the term "directly" was a limitation, which was added only in response to the Examiner's rejection of prior iterations of the Patent's specification, we find that any vestigial language in the specification is trumped by the subsequent amendment as embodied in the issued patent. See, Elekta Instrument S.A. v. O.U.R. Scientific Intern., Inc. 214 F.3d 1302, 1308 (Fed. Cir. 2000)(finding, in the context of a subsequent amendment, that "the unambiguous language of the amended claim controls over any contradictory language in the written

description."); see also, <u>Rheox, Inc. v. Entact, Inc</u>., 276 F.3d 1319, 1327 (Fed. Cir.

2002)("[W]here the prosecution history requires a claim construction that excludes

some but not all of the preferred embodiments, such a construction is permissible and

meets the standard of 'highly persuasive evidentiary support,'" which "follows from

our precedent that '[t]he prosecution history limits the interpretation of claim terms

so as to exclude any interpretation that was disclaimed during prosecution.'"), quoting

<u>Southwall Techs., Inc. v. Cardinal IG Co</u>., 54 F.3d 1570, 1576 (Fed. Cir.

1995)(citations omitted).

As emphasized by Otter Tail, the specification confirms that an invoicer is **not

directly** operating the product, or receiving the payment instructions, if an invoicer

has outsourced remittance.  See, <u>Col. 8</u>:30-36 ("Although the preferred embodiment

anticipates that an invoicer may choose to outsource webserver hosting or webserver

and remittance processing to an outside company on behalf of the invoicer, the service

to customers would be provided so that the customer would not normally be aware

that the **invoicer was not actually operating the product directly**.") [emphasis

added].  As a result, this language, which appears in the specification, does not

contradict the plain and ordinary meaning of the term "directly," such that a third

party, who receives the customer's payment instructions, and relays them to the

- 20 -

invoicer, would be encompassed by the claim language.  Any contrary construction would obliterate the need for the addition of the limiting term "directly."

We also note that the specification contemplates that a system, which employs a third-party service provider, is part of the applicable prior art, and that the limitation -- that payment instructions be "directly" sent to the invoicer -- was the patentee's attempt to distinguish his invention from that prior art.  See, Col 1: 45-52.  The prosecution history unambiguously confirms Emergis' unequivocal effort to distinguish the prior art, as the Examiner required the patent applicant to amend his claims, on two (2) occasions, in order to include the limiting term "directly," in both the preamble, as well as in the limitations of each of the independent claims.  Moreover, the prosecuting attorney's response to the Examiner corroborates the patentee's unmistakable effort to distinguish his Patent from the systems embraced by the prior art -- systems which had employed a third-party service provider, as cited by the Examiner.

Since the patentee, as disclosed by the prosecution history,  plainly disclaimed systems which did not directly transmit the customer's payment instructions to the invoicer in the prosecution history, we find that our interpretation of the term "directly" comports with the ordinary and plain meaning ascribed to it, and is not

contradicted by either the Patent's specification, or prosecution history.  See, <u>Ekchian v. Home Depot Inc.</u>, 104 F.3d 1299, 1304 (Fed. Cir. 1997)("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection."), citing <u>Southwall Techs. Inc. v. Cardinal IG Co.</u>, supra at 1581; see also, <u>Springs Window Fashions LP v. Novo Industries, L.P.</u>, 323 F.3d 989, 995 (Fed. Cir. 2003)("A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement").

Without qualification, or ambiguity, the patentee argued, during the prosecution of the patent application that, "unlike the prior art of record, the present invention eliminates the problems associated with using a third party service provider." <u>Torvik Decl.</u>, Exh 2, at pp. 88-89.  In view of this unqualified admission, as coupled with patentee's addition of the term "directly," the prosecution history supports the ordinary and plain understanding that "directly" forecloses the employment of third-party service providers in facilitating the transfer of a customer's payment instructions to the invoicer.  Ascribing to "directly," the meaning that Emergis advocates, would permit a form of legerdemain in which Emergis could say, before the Examiner, "see we have included the term 'directly' to distinguish the prior art,  but then can say to

Otter Tail, and to other similarly situated persons, "the term 'directly' is not a limitation, but is a preferred embodiment."  We are aware of no authority to allow such a "now you see it, now you don't" approach, and Emergis has drawn none to our attention.

Indeed, our construction of the term "directly," as utilized throughout the Patent's independent claims, finds support in the rulings of at least one other Court, which has interpreted the '362 Patent.[5]  In Emergis Technologies, Inc. v. Cable One, Inc., 2006 WL 2644969 at *7-13 (D. Kan., September 14, 2006), the Court construed the meaning of the term "directly," and addressed many of the same arguments that were advanced by Emergis in this action.  There, the  Court determined, as a matter of law, that the term "directly," as used in the '362 Patent, should be given its plain and ordinary meaning, and rejected Emergis' proposed claim construction.  Id. at *7-8.  The Court found that the language in the specification, which provided for "outsourcing" of certain functions -- such as the function of hosting a webserver -- did not contemplate that the term "directly" would encompass the outsourcing of the

---

[5]The parties have advised that the United States District Court for the District of New Mexico has recently construed the term "directly," as employed in the '362 Patent, and concluded that the transmission of customer payment instructions to a third-party service provider, rather than to the invoicer, did not infringe that Patent as a matter of law.  See, Letter, Docket No. 71.

payment instructions because, "[i]f the language did refer to such a system, a third party would be introduced, and the system in the 362 patent would function much like the consolidator systems that the inventor of the 362 patent disclaimed." <u>Id.</u> at *9.

In addition, the Court concluded, as we have, that the prosecution history did not support Emergis' contention, that it had only disclaimed the use of a third-party vendor by adding "directly" to its independent claims.  Rather, the Court found that, by not clarifying that the inventor meant to narrowly define "directly," so as to exclude only "third party service providers acting independently from the invoicer," the patentee had surrendered all systems in which a third party service provider received the customer's payment instructions directly from the customer.  <u>Id.</u> at *12-*13, quoting <u>Norian Corp. v. Stryker Corp.</u>, 432 F.3d 1356, 1362 (Fed. Cir. 2005) ("[I]t frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art," and "[i]n such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to.").  The Court's construction of the term "directly," in <u>Emergis Technologies, Inc. v. Cable One, Inc.</u>, supra at *7-12, confirms that our interpretation of that term is the correct one.

Therefore, as a matter of law, we adopt the claim construction urged by Otter Tail -- namely, that the element, which requires that "the customer payment instructions are sent from the customer directly to the invoicer" -- should be construed to mean "the payment instructions must be sent from the customer directly to the invoicer without the intervention of any third-party service provider."

        2.     <u>Whether Otter Tail's Payment System Infringes the '362 Patent</u>.

        a.     <u>Standard of Review</u>.  "The second step of an infringement analysis is the court's interpretation of the allegedly infringing device." <u>Liquid Dynamics Corporation v. Vaughan Company, Inc.</u>, supra at 1369.  At this step, "the Court compares the construed claims against the accused device and determines whether judgment as a matter of law is appropriate," and "[a] District Court may grant summary judgment only 'when it is shown that the infringement issue can be reasonably decided only in favor of the movant, when all reasonable factual inferences are drawn in favor of the non-movant.'" <u>Kraft Foods, Inc. v. International Trading Co.</u>, 203 F.3d 1362, 1366 (Fed. Cir. 2000), quoting <u>Voice Techs. Group Inc. v. VMC Sys. Inc.</u>, 164 F.3d 605, 612 (Fed. Cir. 1999).

"To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." <u>Dynacore</u>

Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004), citing

Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314,

1324 (Fed. Cir. 2003); see also, Liquid Dynamics Corp. v. Vaughan Co., Inc., supra

at 1367; PSC Computer Products, Inc. v. Foxconn Intern., Inc., 355 F.3d 1353, 1357

(Fed. Cir. 2004).  "Literal infringement [] requires that the relevant structure in the

accused device perform the identical function recited in the claim and be identical or

equivalent to the corresponding structure in the specification."  Caterpillar Inc. v.

Deere & Co., 224 F.3d 1374, 1379 (Fed. Cir. 2000).

Under the Doctrine of Equivalents, which the Courts apply to prevent "fraud

on the patent," Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608

(1950), by finding infringement where a party steals the heart of an invention by

making insubstantial changes that avoid the literal scope of the claims, Courts

frequently use the function-way-result test; namely, "whether the substitute element

matches the function, way, and result of the claimed element, or whether the substitute

element plays a role not substantially different from the claimed element."  Warner-

Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).  "Although

infringement under the doctrine of equivalents requires an intensely factual inquiry,

a claim of infringement under the doctrine of equivalents may also be decided on

summary judgment where the evidence is such that no reasonable jury could determine two elements to be equivalent." Cardiac Science, Inc. v. Koninklijke Philips Electronics, N.V., 466 F. Supp.2d 1150, 1159 (D. Minn. 2006), citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co, supra at 39 n.8.

"An element in the accused product is equivalent to a claim element if the differences between the two are 'insubstantial' to one of ordinary skill in the art." Cortland Line Co., Inc. v. Orvis Co., Inc., 203 F.3d 1351, 1359 (Fed. Cir. 2000), citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co., supra at 40; see also, Caterpillar Inc. v. Deere & Co., supra at 1379 ("[A]n accused device is equivalent when it performs the identical function in substantially the same way to achieve substantially the same result."). "'Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence.'" Cortland Line Co., Inc. v. Orvis Co., Inc., supra at 1359, quoting Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir. 1997).

　　　　　b.　　Legal Analysis. Otter Tail argues, in support of Summary Judgment, that the  accused system -- Princeton's ePay system -- does not infringe either literally, or under the Doctrine of Equivalents, since the system does not have

the customer's payment instructions transmitted directly to the invoicer, which is a required element of the independent claims of the '362 Patent.  Here, there is no serious factual dispute that a third-party service provider -- namely, Princeton -- receives the customer's payment instructions in the accused system.

Although Emergis contends that discovery has not yet concluded, and that the Princeton website "deceptively" leads the customer to perceive that it is solely dealing with Otter Tail, we find those arguments unavailing, as they do not contradict Otter Tail's critical assertion that its payment system does not involve the customer sending it's payment instructions directly to the invoicer.[6]  Given our construction of the term "directly," the claimed invention **requires** that the customer payment instructions be transmitted only between the customer and the invoicer; and does not include circumstances in which a third party service provider receives the customer's instructions directly.  Otter Tail has averred, without contradiction from Emergis, that the  only electronic payment systems it employs is the CollectPay system -- which Emergis does not here challenge, see, Otter Tail's Memorandum in Opposition to

---

[6]Apparently, Emergis argues that a mistaken perception of infringement, owing to Otter Tail's customers' errant belief that they are dealing directly with Otter Tail, and not with Princeton, nonetheless constitutes infringement in fact.  Notably, Emergis offers no persuasive case authority for that proposition, and our independent research has disclosed none.

Summary Judgment, Docket No. 27, at p. 37 -- and the ePay system, which is at the heart of the parties' dispute.[7]  See, Declaration of Theresa Drexler, Docket No. 35, at ¶¶2-3.

In sum, since we conclude that the scope of the '362 Patent's claims are limited to systems in which the customer's payment instructions are directly transmitted between the customer and the invoicer, Otter Tail's use of a third party service provider, in order to receive a customer's payment instructions, places its systems outside the scope of the invention claimed in the '362 Patent.  Therefore, finding no genuine issues of disputed material fact,[8] which would preclude the grant of Summary

_____

[7]The only apparent differences, between CollectPay and ePay, are the ability to use a credit card, for a fee, and the appearance of the website.  However, since Emergis appears to only contend that Otter Tail's use of the ePay service constitutes unlawful infringement, and there are no substantive differences between the two (2) programs, we find that Summary Judgment is appropriate, on this Record, as to the CollectPay system, as well.

[8]While Emergis argues, pursuant to Rule 56(f), Federal Rules of Civil Procedure, that a ruling on Otter Tail's Motion for Summary Judgment is inappropriate without an opportunity to conduct additional discovery, Emergis has failed to present a sworn Affidavit attesting to what essential discovery is absent, or what specific material facts are not known, which would preclude Summary Judgment.  In the absence of such an Affidavit, and a specification as to what facts it expects to uncover by additional discovery, we find that Summary Judgment is appropriate at this stage of the litigation.  See, Roark v. City of Hazen, 189 F.3d 758, 762 (8th Cir. 1999); Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir. 1997)("When seeking such a continuance [, pursuant to Rule 56(f)], the party opposing summary

Judgment, we direct that Judgment be entered in Otter Tail's favor, and that Emergis'

Complaint be dismissed with prejudice.

NOW, THEREFORE, It is --

ORDERED:

1.      That the Defendant's Motion for Summary Judgment [Docket No. 40]

is GRANTED.

2.      That the Clerk of Court should enter Judgment for the Defendant,

dismissing the Plaintiff's Complaint with prejudice.


BY THE COURT:


Dated:  March 19, 2007                    s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF  U.S.  MAGISTRATE JUDGE


---

judgment must file an affidavit with the trial court to show what specific facts further discovery might unveil."), citing Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1081 (8th Cir. 1993).